Slip Op. 07-61

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                :
CANADIAN WHEAT BOARD,           :
                                :
          Plaintiff,            :
                                :
                                : Before: Richard K. Eaton, Judge
     v.                         :
                                : Consol. Court No. 07-00058
UNITED STATES,                  :
                                :
          Defendant.            :
                                :
_____:
```

OPINION AND ORDER

[Plaintiff's motion for preliminary injunction granted.]

Dated: April 24, 2007

*Steptoe & Johnson, LLP* (*Mark Astley Moran*, *Jamie Benjamin Beaber* and *Matthew S. Yeo*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of Chief Counsel for Import Administration, United States Department of Commerce (*Scott McBride*), of counsel, for defendant.

Eaton, Judge: This matter is before the court on the Canadian Wheat Board's ("CWB") motion for a preliminary injunction pursuant to USCIT Rule 65(a). By its motion, plaintiff seeks an order enjoining the United States, the United States Department of Commerce ("Commerce" or the "Department") and the Bureau of Customs and Border Protection ("Customs") from liquidating or causing or permitting to be liquidated all entries

of Canadian hard red spring ("HRS") wheat that were: "(1)

entered, or withdrawn from warehouse, for consumption prior to

January 2, 2006; (2) imported into the United States by or on

behalf of the CWB; and (3) subject to the antidumping . . . and

countervailing duty . . . orders on HRS wheat from

Canada . . . ."  Pl.'s Mem. P. & A. Supp. Mot. TRO & Prelim. Inj.

1 ("Pl.'s Mem.");[1] *see also* HRS Wheat from Canada, 68 Fed. Reg.

60,641 (Dep't of Commerce Oct. 23, 2003) (notice) (antidumping

duty order); HRS Wheat from Canada, 68 Fed. Reg. 60,642 (Dep't of

Commerce Oct. 23, 2003) (notice) (countervailing duty order)

(collectively, the "AD/CVD Orders").

Plaintiff's substantive challenge is to a legal conclusion

contained in Commerce's notice of revocation of the AD/CVD

Orders, which was published following a negative injury

determination of the United States International Trade Commission

("ITC" or the "Commission").  *See* HRS Wheat from Canada, Notice

of Panel Decision, Revocation of Countervailing and Antidumping

Duty Orders and Termination of Suspension of Liquidation, 71 Fed.

Reg. 8275 (Dep't of Commerce Feb. 16, 2006) (notice) ("Notice of

---

[1]     Pursuant to this Court's entry of a temporary
restraining order on February 28, 2007, and the subsequent
extension of that order for 60 days on March 14, 2007,
plaintiff's merchandise is not presently at risk of being
liquidated.  *See Can. Wheat Bd. v. United States*, Ct. No. 07-
00058 (CIT Feb. 28, 2007) (order granting plaintiff's motion for
TRO) (Ridgway, J.); *Can. Wheat Bd. v. United States*, Ct. No. 07-
00058 (CIT Mar. 14, 2007) (order extending TRO for 60 days)
(Eaton, J.).

Revocation"). The ITC made its negative determination following remand from a binational panel assembled pursuant to article 1904 of the North American Free Trade Agreement ("NAFTA"). Specifically, plaintiff takes issue with Commerce's statement in the Notice of Revocation that it would instruct Customs to liquidate, without duties, only those imports that "entered the United States on or after January 2, 2006." *Id.* For plaintiff, Commerce committed legal error by not making the Notice of Revocation applicable to all entries, the liquidation of which had been suspended, made while the now invalid AD/CVD Orders were in place. Plaintiff claims that its position is supported by this Court's decision in *Tembec, Inc. v. United States*, 30 CIT __, 461 F. Supp. 2d 1355 (2006) ("*Tembec II*"), *judgment vacated by Tembec, Inc. v. United States*, 31 CIT __, Slip Op. 07-28 (Feb. 28, 2007) ("*Tembec III*").[2] *See id.* at __, 461 F. Supp. 2d at 1367 ("Congress did not set up a system to retain duties that are not owed.").

The CWB asserts 28 U.S.C. § 1581(i)(4) (2000)[3] as the

---

[2]     The *Tembec III* Court vacated as moot its prior judgment in *Tembec II*, but, having found "that the issues in *Tembec II* were decided within the context of a live controversy," kept the *Tembec II* decision in place. *Tembec III*, 31 CIT at __, Slip Op. 07-28 at 15.

[3]     Section 1581(i)(4) grants this Court exclusive jurisdiction to entertain "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . (4)
                                                        (continued...)

jurisdictional basis for its suit.  By its opposition to

plaintiff's motion, the United States, on behalf of Commerce,

argues that the Court lacks jurisdiction over this matter.  *See*

Def.'s Opp'n Pl.'s Mot. Prelim. Inj. 4-10 ("Def.'s Opp'n").  For

the reasons that follow, the court finds that jurisdiction lies

pursuant to 28 U.S.C. § 1581(i)(4).  In addition, the court

grants plaintiff's motion for a preliminary injunction.


BACKGROUND

       The CWB is an exporter of Canadian HRS wheat.  In September

2002, the domestic wheat industry petitioned both Commerce and

the ITC seeking investigations into possible dumping and

subsidization of Canadian HRS wheat, and the effects of Canadian

wheat imports on the U.S. market.  Thereafter, the Department

published its findings that Canadian HRS wheat was both

subsidized and being sold in the United States at less than fair

value.  *See* Certain Durum Wheat and HRS Wheat from Canada, 68

Fed. Reg. 52,747 (Dep't of Commerce Sept. 5, 2003) (final

affirmative countervailing duty determination); Certain Durum

Wheat and HRS Wheat from Canada, 68 Fed. Reg. 52,741 (Dep't of

Commerce Sept. 5, 2003) (final affirmative sales at less than

---

       [3](...continued)
administration and enforcement with respect to the matters
referred to in paragraphs (1)-(3) of this subsection and
subsections (a)-(h) of this section."  28 U.S.C. § 1581(i)(4).

fair value determination).

In October 2003, after conducting its own investigation, the ITC determined that imports of Canadian HRS wheat were materially injuring the domestic industry.  *See* Durum and HRS Wheat from Canada, USITC Pub. 3639, Inv. Nos. 701-TA-430A and 430B and 731-TA-1019A and 1019B (Oct. 2003) (Final).  Thereafter, on October 23, 2003, Commerce published the AD/CVD Orders.

Plaintiff challenged the ITC's affirmative determination before a NAFTA panel.  On June 7, 2005, the NAFTA panel found unsupported by substantial evidence the ITC's affirmative material injury determination and remanded the matter to the Commission for further consideration.  *See* HRS Wheat from Canada, USA-CDA-2003-1904-06 (panel decision) at 64 (June 7, 2005), *available at* http://www.nafta-sec-alena.org/app/DocRepository/1/Dispute/english/NAFTA_Chapter_19/USA/ua03060e.pdf (last visited Apr. 24, 2007).  On remand, the ITC reversed its original affirmative determination and concluded "that an industry in the United States is not materially injured, or threatened with material injury, by reason of imports of [HRS] wheat from Canada found to be subsidized and sold in the United States at less than fair value."  HRS Wheat from Canada, USITC Pub. 3806, Inv. Nos. 701-TA-430B and 731-TA-1019B (Oct. 2005) (Remand).

The domestic wheat industry then challenged the ITC's negative determination before the NAFTA panel.  On December 12,

2005, the NAFTA panel sustained the ITC's negative determination
and ordered the U.S. NAFTA Secretary to issue a Notice of Final
Panel Action.  *See* HRS Wheat from Canada, USA-CDA-2003-1904-06
(panel decision on remand determination) at 5, 21-22 (Dec. 12,
2005), *available at* http://www.nafta-sec-alena.org/app/
DocRepository/1/ua03061e.pdf (last visited Apr. 24, 2007).  That
notice was issued on December 23, 2005.

On January 30, 2006, the U.S. NAFTA Secretary published in
the Federal Register a Notice of Completion of Panel Review,
which by its terms was effective as of January 24, 2006.  *See*
Article 1904 NAFTA Panel Reviews; Completion of Panel Review, 71
Fed. Reg. 4896 (Dep't of Commerce Jan. 30, 2006) (notice).

On January 31, 2006, pursuant to 19 U.S.C. § 1516a(g)(5)(B),
Commerce published in the Federal Register notice that the NAFTA
panel's final decision was not in harmony with the Commission's
original affirmative injury determination.  *See* HRS Wheat from
Canada: NAFTA Panel Decision, 71 Fed. Reg. 5050 (Dep't of
Commerce Jan. 31, 2006) ("*Timken* Notice"); *see also Timken Co. v.
United States*, 893 F.2d 337, 340 (Fed. Cir. 1990).  This notice
had an effective date of January 2, 2006.[4]  The notice stated

---

[4]     In *Timken Co. v. United States*, 893 F.2d 337, 340 (Fed.
Cir. 1990), the Court of Appeals for the Federal Circuit held
that 19 U.S.C. § 1516a(c)(1) required Commerce to "publish notice
of a . . . decision not in harmony [with the original
determination] within 10 days of the issuance of the
decision . . . ."  This requirement is equally applicable to
                                              (continued...)

that it "serve[d] to suspend liquidation of entries of subject

merchandise entered, or withdrawn from warehouse, for consumption

on or after January 2, 2006, i.e., 10 days from the issuance of

the Notice of Final Panel Action, at the current cash deposit

rate." *Timken* Notice, 71 Fed. Reg. at 5051.  Thus, the notice

preserved from liquidation those entries made on or after January

2, 2006, but did nothing to prevent liquidation of earlier

entries made with unfair trade duties in place.

Commerce took this action even though it recognized that the

ITC's negative determination removed the foundation for the

AD/CVD Orders.  That is, the ITC's October 2003 affirmative

injury determination had been reversed.  In keeping with this

reversal, on February 16, 2006, the Department published the

Notice of Revocation, which "revok[ed] the countervailing duty

order and antidumping duty order on [HRS] wheat from

Canada . . . ."  Notice of Revocation, 71 Fed. Reg. at 8275.

Nonetheless, Commerce explicitly stated that the Notice of

Revocation "[did] not affect the liquidation of entries made

prior to January 2, 2006."  *Id.*

---

     [4](...continued)
NAFTA panel decisions not in harmony with the original challenged
determination.  *See* 19 U.S.C. § 1516a(g)(5)(B).  Thus, even
though the *Timken* Notice was published later than 10 days after
the NAFTA panel decision, it obtained legal effect on January 2,
2006, the last day the notice could lawfully be published.

Plaintiff's entries were made in September 2004.  At the time plaintiff entered its merchandise, the goods were subject to the duties imposed by the then-existing AD/CVD Orders.  As a result, the CWB paid cash deposits based on the 5.29 percent net subsidy rate and 8.86 percent antidumping duty margin.[5] Liquidation of these entries was suspended on October 31, 2005, when the CWB filed a request for an administrative review of the AD/CVD Orders.  *See* Pl.'s Mem. 6.  On February 26, 2007, however, the CWB withdrew its request for an administrative review, thereby exposing its entries to liquidation under the terms of the Notice of Revocation.  *See* Pl.'s Mem. 7.

On February 21, 2007, nearly one year after the publication of the Notice of Revocation, the CWB commenced this action. Plaintiff now asks the court to enjoin preliminarily the liquidation of its merchandise to allow it to litigate the merits of its case.


DISCUSSION

The Courts have developed the familiar four-part test requiring a party seeking injunctive relief to establish that:

---

[5]     According to Customs's fiscal year 2004 annual report, as of October 1, 2004, $176,171.37 in cash deposits had been paid on entries of Canadian HRS wheat.  *See* http://www.cbp.gov/ linkhandler/cgov/import/add_cvd/cont_dump/cdsoa_04/fy2004_annual/ clearing_account.ctt/clearing_account.pdf (last visited April 24, 2007).  This amount includes any cash deposits paid by the CWB on its September 2004 entries.

(1) it is likely to succeed on the merits of its complaint; (2) absent an injunction, it will be irreparably harmed; (3) the balance of hardships on the parties favors the movant; and (4) the public interest would be better served by the issuance of the injunction.  *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

In determining whether the movant has carried its burden and satisfied the four-part test, "[n]o one factor, taken individually is necessarily dispositive." *FMC Corp.*, 3 F.3d at 427.  Indeed, "[a]s a basic proposition, the matter lies largely within the sound discretion of the [Court]." *Id.*

I.   Likelihood of Success on the Merits

The court first addresses plaintiff's claim that it is likely to succeed on the merits of its case.  Here, the most significant obstacle facing it is defendant's assertion that the Court lacks jurisdiction to grant the relief sought.

The Court of Appeals for the Federal Circuit has held that "[t]he question of jurisdiction closely affects the [movant]'s likelihood of success on its motion for a preliminary injunction." *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005).  The importance of addressing the question of jurisdiction when

deciding a motion for a preliminary injunction is amplified by
the Federal Circuit's statement that failure to do so is legal
error.  *See id.*  While this rule may be most applicable where a
court grants rather than denies a motion seeking an injunction,
*see Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1353
(Fed. Cir. 2000), here, a discussion of jurisdiction appears to
be mandatory.

    Plaintiff claims that the Court may hear this case under its
residual provision of jurisdiction set forth in 28 U.S.C.
§ 1581(i).  The important caveat to finding jurisdiction under
this provision is that "[s]ection 1581(i) jurisdiction may not be
invoked when jurisdiction under another subsection of § 1581 is
or could have been available, unless the remedy provided under
that other subsection would be manifestly inadequate."  *Miller &
Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987).  Thus,
as an initial matter, the court must address defendant's
contention that plaintiff is precluded from litigating its action
under 28 U.S.C. § 1581(i)(4) because jurisdiction was available
under 28 U.S.C. § 1581(c).[6]

    A.   Notice of Revocation and Reviewability Pursuant to 19
         U.S.C. § 1516a

    The court first takes up the question of whether the Notice

_____

    [6]    Congress granted the Court "exclusive jurisdiction of
any civil action commenced under [19 U.S.C. § 1516a]."  28 U.S.C.
§ 1581(c).

Consol. Court No. 07-00058                                    Page  11

of Revocation constitutes a reviewable determination under 19

U.S.C. § 1516a and thus may be reviewed pursuant to 28 U.S.C.

§ 1581(c).  Defendant insists that this is this case, while

plaintiff claims that the Notice of Revocation is not a

reviewable determination and thus lies outside the Court's 28

U.S.C. § 1581(c) jurisdiction.[7]  While plaintiff acknowledges

that the Notice of Revocation contains a legal conclusion

resulting from Commerce's application of the unfair trade laws,

it maintains that the notice did not announce a final

determination within the meaning of 19 U.S.C. § 1516a.  Rather,

plaintiff argues that the Notice of Revocation merely implemented

the ITC's negative injury determination.  Further, plaintiff

asserts that because the Notice of Revocation reflects Commerce's

administration and enforcement of the antidumping and

countervailing duty laws, it is reviewable by this Court pursuant

to 28 U.S.C. § 1581(i)(4).

---

[7]      The dispute centers on whether the Notice of Revocation
falls within the terms of 19 U.S.C. § 1516a(a)(2)(B)(i), which
provides for judicial review of:

> [f]inal affirmative determinations by the
> administrating authority and by the
> Commission under section 1671d [final
> determinations regarding countervailable
> subsidies] or 1673d [final determinations
> regarding sales at less than fair value] of
> this title, including any negative part of
> such a determination (other than a part
> referred to in clause (ii)).

The Department's primary objection to plaintiff's assertion of jurisdiction is that the "CWB could have challenged the Notice of Revocation pursuant to 28 U.S.C. § 1581(c) . . . ." Def.'s Opp'n 4.  Underlying the Department's position is its contention that the Notice of Revocation is a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B)(i), and therefore judicial review was available at the time of its issuance. *See* Def.'s Opp'n 5. Thus, the Department claims that because plaintiff could have obtained the same remedy it now seeks had it proceeded under 28 U.S.C. § 1581(c), the exercise of jurisdiction under 28 U.S.C. § 1581(i) is prohibited.  *See* Def.'s Opp'n 4 (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)).

Specifically, the Department states that in issuing the Notice of Revocation:

> Commerce reapplied the antidumping duty
> statutes with respect to the issuance of
> antidumping duty orders and concluded that
> the orders should be revoked only
> prospectively.  In essence, Commerce amended
> its determinations in the investigations,
> which pursuant to [*Freeport Minerals Co. v.
> United States*, 758 F.2d 629 (Fed. Cir.
> 1985)],[8] were reviewable pursuant to 19

---

[8]    As support for its position, Commerce relies on the Federal Circuit's decision in *Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985).  The court finds this reliance misplaced.  The controversy here involves a legal

(continued...)

U.S.C. § 1516a and 28 U.S.C. § 1581(c).

Def.'s Opp'n 7.

In keeping with this argument, Commerce asserts that because it believes the Notice of Revocation was a final determination subject to review in this Court pursuant to 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), plaintiff untimely commenced the instant action.  According to Commerce:

> CWB is impermissibly attempting [to] bring a claim that it could have brought pursuant to 28 U.S.C. § 1581(c) more than a year ago, when the Notice of Revocation was issued. Such a claim is untimely pursuant to 19 U.S.C. § 1516a(a)(2)(A), and CWB may not circumvent that statutory bar by attempting to invoke the Court's jurisdiction pursuant to section 1581(i).

Def.'s Opp'n 4-5.[9]  Thus, because plaintiff waited more than a

---

[8](...continued)
conclusion found in the Notice of Revocation.  *Freeport Minerals* involved a challenge to a final determination made on remand. Such final determinations are indeed reviewable under 19 U.S.C. § 1516a.  As in *Tembec, Inc. v. United States*, 30 CIT __, __, 441 F. Supp. 2d 1302, 1316 n.19 (2006) ("*Tembec I*"), defendant misstates the "matter" to be reviewed.  Here, the matter is the validity of the administration and enforcement of a final determination, not the validity of the final determination itself.  *See Tembec I*, 30 CIT at __, 441 F. Supp. 2d at 1318 ("Plaintiffs have brought a challenge to the administration and enforcement of a determination, not to the validity of the determination itself.  Consequently, the availability of a remedy under § 1581(c) as to the underlying determination does not bar suit under § 1581(i).").  Thus, the teaching of *Freeport Minerals* does not apply.

[9]     Pursuant to 19 U.S.C. § 1516a(a)(2)(A):

Within thirty days after——

(continued...)

Consol. Court No. 07-00058                              Page  14

year from the publication of the Notice of Revocation to sue,

defendant insists that its claim is barred by the 30-day statute

of limitations applicable to determinations reviewable under 19

U.S.C. § 1516a.  *See* 28 U.S.C. § 2636(c).

Commerce's arguments notwithstanding, the court finds that

the Notice of Revocation is not a reviewable final determination

under 19 U.S.C. § 1516a and, as a result, plaintiff had no remedy

available to it under 28 U.S.C. § 1581(c).  While the agency may

have had internal discussions regarding the contents of the

Notice of Revocation, its legal conclusion that the revocation of

the orders should be prospective only, was reached without

notice, public hearings or briefing by the parties and was

---

[9](...continued)
        (i) the date of publication in the
        Federal Register of . . .

           (II) an antidumping or
           countervailing duty order
           based upon any
           determination described
           in clause (i) of
           subparagraph (B) . . .

an interested party who is a party to the
proceeding in connection with which the
matter arises may commence an action in the
United States Court of International Trade by
filing a summons, and within thirty days
thereafter a complaint, each with the content
and in the form, manner, and style prescribed
by the rules of that court, contesting any
factual findings or legal conclusions upon
which the determination is based.

19 U.S.C. § 1516a(a)(2)(A).

outside of the reviewable determinations found in 19 U.S.C.
§ 1516a.  In other words, the Notice of Revocation "was *not* made
during any proceeding that would culminate in a determination for
which judicial review is provided under 19 U.S.C. § 1516a and 28
U.S.C. § 1581(c)."  *Ceramica Regiomontana, S.A. v. United States*,
5 CIT 23, 26, 557 F. Supp. 596, 600 (1983) (emphasis in
original); *see also Consol. Fibers, Inc. v. United States*, 30 CIT
__, __, 465 F. Supp. 2d 1338, 1341 (2006) (finding no
jurisdiction under 28 U.S.C. § 1581(c) to hear plaintiff's claim
challenging ITC's denial of its request for reconsideration of
ITC final determination and stating that "[h]ad the Commission
commenced a reconsideration proceeding, then the resulting
reconsideration determination would have been reviewable under 28
U.S.C. § 1581(c). . .").

     In like manner, the court finds without merit the
Department's contention that the Notice of Revocation, because it
revoked the AD/CVD Orders for all entries made on or after
January 2, 2006, and reaffirmed the orders' application to all
other entries, is a reviewable determination as defined by 19
U.S.C. § 1516a(a)(2)(B)(i).  *See* Def.'s Opp'n 5.  This argument
is merely a different iteration of Commerce's previous claim.

     Under 19 U.S.C. § 1516a(a)(2)(B)(i), this Court may review
final affirmative and negative determinations made by Commerce
regarding countervailable subsidies or sales at less than fair

value.  The Department urges that the Notice of Revocation was a

final affirmative determination in that it reasserted the legal

effect of the affirmative determinations in the AD/CVD Orders

with respect to entries made prior to January 2, 2006, and was a

negative determination with respect to subject entries made after

that date.  In other words, the Department claims that the Notice

of Revocation contains both a final affirmative and a final

negative determination.

This contention is impossible to credit.  In *Norsk Hydro*

*Canada, Inc. v. United States*, 472 F.3d 1347 (Fed. Cir. 2006),

the Federal Circuit instructed this Court to "look to the true

nature of [an] action."  *Id.* at 1355 (internal quotation marks &

citation omitted).  The true nature of plaintiff's case can be

seen by examining what it is not.  That is, it is not a case

"contesting any factual findings or legal conclusions" contained

in the final determinations of either the ITC or Commerce,

following their investigations.  19 U.S.C. § 1516a(a)(1).  Both

Commerce's and the ITC's final determinations were published

before the Notice of Revocation.  The conclusion that the AD/CVD

Orders should be revoked only prospectively was found in neither.

Indeed, as the prevailing party, plaintiff had no dispute with

the ITC's final negative determination that resulted in the

Notice of Revocation.  That being the case, the teaching of

*Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed.

Consol. Court No. 07-00058                              Page  17

Cir. 2003), is useful.

In *Consolidated Bearings*, an importer challenged Commerce's

liquidation instructions to Customs, seeking to compel the

application of the antidumping duty rates from the Department's

final determination to its merchandise.  The Federal Circuit

confirmed jurisdiction under 28 U.S.C. § 1581(i) after finding

that "Consolidated [did] not object to the final results.  Rather

Consolidated [sought] application of those final results to its

entries . . . ."  *Consol. Bearings*, 348 F.3d at 1002.  The

Federal Circuit based its finding on its conclusion that

plaintiff's "case involve[d] a challenge to [Commerce's] 1998

instructions, which is not an action defined under [19 U.S.C.

§ 1516a]."  *Id.*  The Federal Circuit further found that

"[b]ecause Consolidated [was] not challenging the final results,

[28 U.S.C. § 1581(c)] is not and could not have been a source of

jurisdiction for this case."  *Id.*  Finally, after concluding that

jurisdiction did not lie pursuant to § 1581(c), the Federal

Circuit found the case "squarely within the provisions of

subsection (i)."  *Id.*  Specifically, the Federal Circuit observed

that "Commerce's liquidation instructions direct Customs to

implement the final results of administrative reviews.

Consequently, an action challenging Commerce's liquidation

instructions is not a challenge to the final results, but a

challenge to the 'administration and enforcement' of those final

results." *Id.*

Likewise, the Federal Circuit found in *Shinyei Corp. of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), that Commerce's liquidation instructions were reviewable under 28 U.S.C. § 1581(i)(4):

> As we have recently held, a challenge to Commerce instructions on the ground that they do not correctly implement the published, amended administrative review results, "is not an action defined under [19 U.S.C. § 1516a] of the Tariff Act." [19 U.S.C. § 1516a] is limited on its face to the judicial review of "determinations" in countervailing duty and antidumping duty proceedings.

*Id.* at 1309 (quoting *Consol. Bearings*, 348 F.3d at 1002).

The case law from the Federal Circuit, then, confirms that the Notice of Revocation is not a reviewable determination within the meaning of 19 U.S.C. § 1516a and thus plaintiff's challenge to its contents could not be heard by this Court pursuant to 28 U.S.C. § 1581(c).  That is, if a legal conclusion, found in liquidation instructions based on Commerce's own final determination, is reviewable under 28 U.S.C. § 1581(i), then a legal conclusion found in the Notice of Revocation resulting from an ITC final determination is too.

The court finds that the Notice of Revocation implemented the ITC's final determination that domestic wheat producers were not injured or threatened with injury by imports of Canadian HRS wheat.  Thus, although containing a legal conclusion with respect

to the prospective application of the revocation, the Notice of
Revocation cannot be categorized as a final affirmative
determination subject to judicial review under 19 U.S.C.
§ 1516a(a)(B)(i) and 28 U.S.C. § 1581(c).


    B.   Choice of Forum and Jurisdiction

    The court now turns to the question of whether plaintiff's
decision to challenge the original ITC affirmative injury
determination before a NAFTA panel rather than in this Court
precludes jurisdiction over its claim under 28 U.S.C. § 1581(i).

    Commerce asserts that the "CWB could also have obtained an
adequate remedy by challenging the ITC's original 2003
determination in this Court pursuant to section 1581(c) and,
thus, section 1581(i) jurisdiction is unavailable . . . ."
Def.'s Opp'n 7–8.  Put another way, the Department maintains that
by choosing to appeal the Commission's original affirmative
injury determination to a NAFTA panel, the CWB is now "foreclosed
from seeking relief from the Court, pursuant to 28 U.S.C.
§ 1581(i), to enforce the NAFTA panel decision or to obtain
relief that it might have obtained had it elected to proceed in
this Court in the first place."  Def.'s Opp'n 8.

    The Department recognizes that a similar line of argument
was found wanting by this Court in *Tembec, Inc. v. United States*,

30 CIT __, 441 F. Supp. 2d 1302 (2006) ("*Tembec I*").[10]   *Tembec I*

involved plaintiffs' appeal of an affirmative injury

determination from the ITC to a NAFTA panel.  The panel found the

ITC determination unsupported by substantial evidence and

remanded the matter to the Commission.  On remand, the Commission

issued a negative injury determination.  Thereafter, Commerce

revoked the unfair trade orders prospectively.

    Unlike here, the plaintiff in *Tembec I* also instituted a

parallel proceeding before the World Trade Organization ("WTO").

That proceeding resulted in an affirmative injury determination

---

    [10]   In support of its contention that the *Tembec I*
rationale with respect to jurisdiction no longer applies,
Commerce cites the Federal Circuit's recent decision in
*International Custom Products, Inc. v. United States*, 467 F.3d
1324 (Fed. Cir. 2006) ("*ICP*").  In Commerce's view, the *Tembec I*
Court incorrectly focused on the nature of plaintiffs' claims
instead of examining the remedies available under the other
subsections of section 1581.  Here, Commerce maintains that the
Federal Circuit's holding in *ICP* precludes the exercise of
jurisdiction under 28 U.S.C. § 1581(i) because "[r]elief was
'otherwise available,' but [plaintiff] simply elected not to
pursue such relief."  Def.'s Opp'n 8.  Commerce further asserts
that in this case, when determining the propriety of exercising
jurisdiction under 28 U.S.C. § 1581(i), the Court must, in
accordance with *ICP*, "focus upon the remedies available and upon
the fact that CWB could have received the same remedy it seeks
here, had it originally challenged the ITC's 2003 injury
determination," in this Court.  Def.'s Opp'n 10.
    The court finds nothing in *ICP* requiring it to abandon the
reasoning in *Tembec I* that a party's decision to challenge the
substance of a final determination before a NAFTA panel does not
preclude it from contesting the administration and enforcement of
that final determination in this Court.  Indeed, as has been
previously noted, the CWB's challenge is to a legal conclusion
found in a notice of revocation, which is not a final
determination within the meaning of 19 U.S.C. § 1516a.  Thus,
plaintiff had no avenue to relief under 28 U.S.C. § 1581(c).

by the ITC and a direction by the United States Trade

Representative ("USTR") to Commerce to amend the unfair trade

orders to implement the determination.  The plaintiffs in *Tembec*

*I* filed a lawsuit in this Court challenging the action taken by

the USTR directing the implementation of the determination.  *See*

*Tembec I*, 30 CIT at __, 441 F. Supp. 2d at 1306.

     The *Tembec I* Court found that plaintiffs' appeal of the

final determination to a NAFTA panel did not preclude the

exercise of jurisdiction by this Court to hear a separate

challenge to the USTR's administration and enforcement of the

determination.  Thus, "the court [had] jurisdiction to review the

administration and enforcement of that determination regardless

of where the substance of the determination [was] being

reviewed."  *Tembec I*, 30 CIT at __ __, 441 F. Supp. 2d at 1316

n.19.  In addition, the *Tembec I* Court acknowledged the general

rule reiterated by the Federal Circuit in *International Custom*

*Products, Inc. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006),

that "section 1581(i) jurisdiction may not be invoked when

jurisdiction under another subsection of § 1581 is or could have

been available, unless the remedy provided under that other

subsection would be manifestly inadequate," *Tembec I*, 30 CIT at

__, 441 F. Supp. 2d at 1317 (internal quotation marks, citations

& alteration omitted), but stated that "[t]his constraint does

not mean, however, that Plaintiffs must forgo their right to

NAFTA panel review of the substance of [a determination] in order to seek review of a completely separate action taken to administer and enforce [the determination]."  *Id.* at __, 441 F. Supp. 2d at 1317.

Likewise, the CWB's challenge to the ITC's original affirmative injury determination before a NAFTA panel did not oust this Court of jurisdiction to entertain its challenge to Commerce's administration and enforcement of that determination. Therefore, because: (1) the legal conclusion found in the Notice of Revocation was not reviewable pursuant to 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c); and (2) plaintiff's decision to contest the ITC's original affirmative injury determination before a NAFTA panel does not preclude the exercise of jurisdiction to hear plaintiff's challenge to the administration and enforcement of that determination, the court finds that it has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1581(i)(4).


C.   Prospective Revocation of AD/CVD Orders

As plaintiff's asserted basis of jurisdiction has been found to be valid, the court now addresses the likelihood that plaintiff will succeed on the substantive merits of its case. While the applicable standard for determining whether a movant has satisfied the likelihood of success on the merits portion of the four-part test remains unsettled by the Federal Circuit, it

is apparent that the court must, at minimum, weigh plaintiff's

arguments in favor of its position against those raised in

opposition by defendant.  *See U.S. Ass'n of Imps. of Textiles and*

*Apparel*, 413 F.3d at 1347 ("[T]he movant's evidence and arguments

must actually be weighed against those of the non-movant to

determine whether the movant's likelihood of success meets the

applicable standard, whatever that standard may be.") (citations

& footnote omitted).

     The parties agree that plaintiff's case hinges on the

interpretation and application of 19 U.S.C. § 1516a(g)(5)(B) and

(C).  Section 1516a(g)(5)(B) contains the general rule for the

liquidation of pre-*Timken* notice entries and provides:

> In the case of a determination for which
> binational panel review is requested pursuant
> to article 1904 of the NAFTA or of the
> Agreement, entries of merchandise covered by
> such determination shall be liquidated in
> accordance with the determination of the
> administering authority or the Commission, if
> they are entered, or withdrawn from
> warehouse, for consumption, on or before the
> date of publication in the Federal Register
> by the administering authority of notice of a
> final decision of a binational panel, or of
> an extraordinary challenge committee, not in
> harmony with that determination.  Such notice
> of a decision shall be published within 10
> days of the date of the issuance of the panel
> or committee decision.

19 U.S.C. § 1516a(g)(5)(B).

     There is, however, an exception to the general rule in 19

U.S.C. § 1516a(g)(5)(C), which is entitled "Suspension of

liquidation" and states:

> Notwithstanding the provisions of
> subparagraph (B), in the case of a
> determination described in clause (iii)
> [administrative review] or (vi) [scope
> ruling] of subsection (a)(2)(B) of this
> section for which binational panel review is
> requested pursuant to article 1904 of the
> NAFTA or of the Agreement, the administering
> authority, upon request of an interested
> party who was a party to the proceeding in
> connection with which the matter arises and
> who is a participant in the binational panel
> review, shall order the continued suspension
> of liquidation of those entries of
> merchandise covered by the determination that
> are involved in the review pending the final
> disposition of the review.

19 U.S.C. § 1516a(g)(5)(C)(i).

For Commerce, the language of § 1516a(g)(5)(B) applies and

all plaintiff's entries made prior to the publication of the

*Timken* Notice are to be liquidated in accordance with the

original determination.  *See* Def.'s Opp'n 13.  For plaintiff, the

exception found in § 1516a(g)(5)(C) applies and preserved its

entries for liquidation with no duties following revocation of

the AD/CVD Orders.

Plaintiff relies on *Tembec II* as support for its position

that its entries, all of which were made prior to the *Timken*

Notice, should be liquidated in accordance with the ITC's

negative injury determination.  In *Tembec II*, the Court found

that the general rule of 19 U.S.C. § 1516a(g)(5)(B) did not apply

to pre-*Timken* notice entries when liquidation of those entries

had been suspended.  In that case, the court found that 19 U.S.C.
§ 1516a(g)(5)(C) controlled.  *See Tembec II*, 30 CIT at __, 461 F.
Supp. 2d at 1367 ("Entries, the liquidation of which has been
suspended, cannot, then, be liquidated with AD/CV duties under
these conditions. . . .  Rather, Congress provided for a
suspension of liquidation to keep entries available for
liquidation in accordance with law."); *see also Asociacion
Colombiana de Exportadores de Flores v. United States*, 916 F.2d
1571, 1577 (Fed. Cir. 1990) ("The flaw in the government's
argument is that without a valid antidumping determination in the
original order, there can be no valid determination in a later
annual review.").  Thus, the *Tembec II* Court ordered Commerce to
instruct Customs to liquidate all of plaintiffs' subject entries,
including those made prior to the *Timken* notice, without unfair
trade duties.

        The court cannot discern a substantial difference between
the facts presented in this case and those faced by the Court in
*Tembec II*.  Therefore, this Court's decision in *Tembec II*
indicates that plaintiff will likely succeed on the merits of its
case and thus this part of the four-part test favors granting
plaintiff's motion.


II.  Irreparable Harm
        The next part of the four-part test requires a movant to

demonstrate that it will suffer irreparable harm in the absence
of an injunction.  Plaintiff asserts that it will be irreparably
harmed if liquidation is not enjoined because "[i]f Customs is
permitted to liquidate the CWB's entr[ies] at issue in this
action prior to the completion of judicial review, the CWB may be
denied its only remedy for Commerce's failure to revoke the
AD/CVD Orders and liquidate its entr[ies] in accordance with
law."  Pl.'s Mem. 10.  In other words, plaintiff contends that if
liquidation is not enjoined, Customs may liquidate its pre-
January 2, 2006, entries with the unfair trade duties in place
and the CWB will lose its opportunity to reclaim its deposits
with respect to those entries.  The Department does not oppose
plaintiff's assertion of irreparable harm.  *See* Tr. Oral Argument
24:7-8 ("Likewise, turning to irreparable injury, we agree
that . . . under [*Zenith Radio Corp. v. United States*, 710 F.2d
806 (Fed. Cir. 1983)] plaintiff[] would meet that prong.").

It has long been established that liquidation renders
without meaning a movant's "statutory right to obtain judicial
review" with respect to the liquidated entries and, thus, that
the "consequences of liquidation do constitute irreparable
injury."  *Zenith*, 710 F.2d at 810 ("The statutory scheme has no
provision permitting reliquidation in this case or imposition of
higher dumping duties after liquidation if [plaintiff] is
successful on the merits.  Once liquidation occurs, a subsequent

decision by the trial court on the merits . . . can have no

effect on the dumping duties assessed . . . .").  Here, plaintiff

opened up its pre-January 2, 2006, entries to liquidation by

withdrawing its request for an administrative review.  If some or

all of those entries are liquidated, plaintiff would lose its

right to judicial review as to those entries, although other

issues might remain to be litigated.  Therefore, the court finds

that plaintiff has demonstrated that as to any pre-January 2,

2006, entries that face liquidation, it will suffer irreparable

harm absent a preliminary injunction.  This factor, then, also

favors granting plaintiff's motion.


III. Balance of Hardships

     "In evaluating whether to grant a motion for injunctive

relief, the court must 'determine which party will suffer the

greatest adverse effects as a result of the grant or denial of

the preliminary injunction.'"  *Nat'l Fisheries Inst., Inc. v.*

*U.S. Bureau of Customs & Border Protection*, 30 CIT __, __, 465 F.

Supp. 2d 1300, 1329 (2006) (quoting *Ugine-Savoie Imphy v. United*

*States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688 (2000)).

     Plaintiff contends that the balance of hardships leans in

its favor because only an injunction can "preserve fully the

CWB's statutory right to challenge the failure of Commerce to act

in accordance with law."  Pl.'s Mem. 13.  For plaintiff, this

outweighs any harm the United States might endure because the
government "already holds the CWB's antidumping and
countervailing duty cash deposits for the relevant entr[ies],
which ensures that its rights are fully protected."  Pl.'s Mem.
13-14 (citing *Böhler-Uddeholm Corp. v. United States*, 23 CIT 801,
803 (1999) (not reported in the Federal Supplement)) (internal
quotation marks omitted).

For its part, the Department states that "the balance of
hardships . . . counsel[s] against issuance of an injunction
concerning a question that could have been before the
international body that is charged with making the same findings
that plaintiff[] [is] asking the Court to make."  Def.'s Opp'n
19.  In other words, the Department relies on its jurisdictional
arguments to support its assertion that the balance of hardships
leans in its favor.

The court finds that defendant will suffer comparably less
harm as the result of an injunction than would plaintiff in the
absence of equitable relief.  Here, the United States currently
holds plaintiff's cash deposits.  Therefore, "at most, the
decision to grant an injunction . . . will only delay
liquidation." *Fundicao Tupy S.A. v. United States*, 11 CIT 635,
638, 671 F. Supp. 27, 30 (1987).  Plaintiff, on the other hand,
risks losing a portion of its deposits.  Thus, the court
concludes that the balance of hardships weighs in favor of

granting plaintiff's motion.


IV.   Public Interest

     The final part of the four-part test requires the movant to
demonstrate that the public interest would be better served by
the issuance of an injunction.  Plaintiff contends that this part
favors granting its motion because "the public interest is best
served by ensuring that duties are assessed under the trade
statutes in accordance with law."  Pl.'s Mem. 14.  That is,
because it maintains that Commerce acted unlawfully by limiting
the effect of the Notice of Revocation to those entries made on
or after January 2, 2006, plaintiff argues that final judicial
resolution of the legality of Commerce's application of the
unfair trade statute would, no matter the outcome, assure the
public that Commerce was or would ultimately be complying with
the law.

     The Department urges that "the integrity of the NAFTA
binational panel process and the public policy inherent in
Congress'[s] clear separation between binational panels and the
courts would suffer, both to the detriment of the Executive
Branch and to public policy in general" were the injunction to be
issued.  Def.'s Opp'n 19-20.

     "[T]he public interest is served by ensuring that [Commerce]
complies with the law, and interprets and applies [the]

Consol. Court No. 07-00058                              Page  30

international trade statutes uniformly and fairly." *Ugine-Savoie Imphy*, 24 CIT at 1252, 121 F. Supp. 2d at 690 (internal quotation marks & citations omitted) (third alteration in original). Plaintiff's complaint raises an important question concerning whether Commerce complied with the law when it issued the Notice of Revocation.  Thus, because of the public's interest in ensuring that duties are assessed in accordance with law, this factor also favors granting plaintiff's motion.


CONCLUSION

     Based on the foregoing, the court finds that plaintiff has demonstrated its entitlement to injunctive relief.  Therefore, it is hereby

     ORDERED that plaintiff's motion for a preliminary injunction is granted; and it is further

     ORDERED that the parties consult and jointly submit to the court the form of the preliminary injunction on or before May 7, 2007.  The parties' submission shall be made to Casey Ann Cheevers, Case Manager, United States Court of International Trade, One Federal Plaza, New York, New York, 10278.


                                        /s/Richard K. Eaton
                                          Richard K. Eaton


Dated: April 24, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                               Deputy Clerk